[No. 46480.    En Banc.    October 23, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES
EARL CALDWELL, *Petitioner.*

*John R. Muenster* of *Seattle–King County Public
Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Thomas E. Kelly, Jr., Deputy,* for respondent.

UTTER, C.J.—The sole issue in this case is whether a jury instruction stating "the law presumes that every man intends the natural and probable consequences of his own acts" violated due process requirements for use of presumptions in criminal cases. We hold that the instruction violated the due process guaranties of the fourteenth amendment to the United States Constitution and article 1, section 3 of the Washington Constitution. The conviction of first degree assault is reversed and the case is remanded for a new trial.

On the evening of August 11, 1977, John Parmon and Rudy Perez became associated with two women during an evening of drinking in Seattle. The group drove to an apartment house and Parmon and one of the women went into the house while Perez and the other woman, Myrtle Sinclair, remained in the car. After a period of time, Parmon returned to the car, stating that his wallet had been stolen.

At Sinclair's suggestion, the two men and Sinclair then drove to another house. There was conflicting testimony as to the reason for the trip to the new location. Parmon and Perez, who testified for the State, explained that Sinclair had offered to help retrieve the wallet and was going to the house to obtain the phone number of the other woman. Sinclair, who testified for the defense, stated that they were going to the house to obtain heroin.

When the two men and Sinclair arrived at the new location, Sinclair entered the house and returned with a man. The man took out a revolver, shot Parmon in the jaw and pistol-whipped Perez. Parmon and Perez later identified the petitioner, James Earl Caldwell, as that man.

Caldwell was charged with first degree assault of Parmon and second degree assault of Perez. At trial, the court explained to the jury that "[a] person commits the crime of assault in the first degree when, with intent to kill a human

being, he assaults another with a firearm." Instruction No. 6. The trial judge then stated:

> The court instructs the jury that the law presumes that every man intends the natural and probable consequences of his own acts. It is not necessary to establish intent by direct and positive evidence but intent may be established by inference and in the same way as any other fact by taking into consideration the acts of the parties and all the facts and circumstances of the case.

Instruction No. 9. Defense counsel excepted to the giving of this instruction.

Caldwell was convicted on both counts. Furthermore, he was found to have been carrying a firearm, and the trial court imposed mandatory minimum sentences on both counts pursuant to RCW 9.41.025. Caldwell appealed and argued that the trial court's instruction on first degree assault created an unconstitutional mandatory presumption, and that the weapon enhancement of the first degree assault sentence violated *State v. Workman,* 90 Wn.2d 443, 584 P.2d 382 (1978). The Court of Appeals rejected the presumption claim and upheld the first degree assault conviction, but reversed the mandatory minimum sentence on the basis of the *Workman* decision. *State v. Caldwell,* 23 Wn. App. 8, 591 P.2d 849 (1979).

We granted review solely of that portion of the Court of Appeals decision which rejected the presumption claim and upheld the conviction of first degree assault.

Our analysis of the constitutionality of the presumption instruction in this case is governed by the United States Supreme Court's decision in *Sandstrom v. Montana,* 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450 (1979), which considered a virtually identical instruction. The defendant in *Sandstrom* had been charged with "deliberate homicide" and under Montana law, an element of this offense is intent to kill. The trial court instructed the jury that: "'[t]he law presumes that a person intends the ordinary consequences of his voluntary acts.'" *Sandstrom,* at 513. In reviewing the constitutionality of this instruction, the United States

Supreme Court examined the record and found that the trial court did not instruct the jury on the proper means of applying this presumption and specifically did not inform the jury that the presumption was rebuttable and could be rebutted by the defendant's presentation of "some evidence." *Sandstrom,* at 514–18. Noting that the common dictionary meaning of the word "presume" is "to suppose to be true without proof," the court concluded that a reasonable juror might have believed on the basis of this instruction that the defendant bore the burden of proof or persuasion on the issue of intent to kill. *Sandstrom,* at 517–19. Since intent to kill was an element of the offense, the court found that the instruction unconstitutionally relieved the State of the burden of establishing a fact necessary to constitute the crime. *Sandstrom,* at 521–24. The court remanded the case to the Montana Supreme Court to determine whether the constitutional violation was prejudicial or harmless error in Sandstrom's case. *Sandstrom,* at 526–27.

■ In the present case, as in *Sandstrom v. Montana,* intent to kill is an element of the offense. *See* RCW 9A.36-.010(1)(a). The instruction given in this case is essentially identical to the instruction given in *Sandstrom.* The instruction in this case stated: "The court instructs the jury that the law presumes that every man intends the natural and probable consequences of his own acts." Like the instructions in *Sandstrom,* the instructions in this case did not specifically inform the jury that the presumption was rebuttable and could be rebutted by the defendant's presentation of "some evidence." Although the trial court in this case did give general instructions on presumption of innocence and proof beyond a reasonable doubt, these general instructions are not sufficient to convey the necessary specific information about the manner of applying the presumption that every person intends the natural and probable consequences of his or her acts. *See Sandstrom,* at 518 n.7; *Holloway v. McElroy,* 474 F. Supp. 1363, 1370 (M.D.

Ga. 1979). In the absence of the requisite specific instructions on the nature and operation of the presumption, the giving of the instruction that the law presumes every man intends the natural and probable consequences of his own acts, unconstitutionally relieved the State of the burden of proving an element of the offense. *See Sandstrom,* at 521–24.

It remains to be determined whether the error in the instructions was prejudicial or harmless error. Since the error infringed upon the petitioner's constitutional rights, the error is presumed prejudicial, and the State has the burden of proving that the error was harmless. *State v. Stephens,* 93 Wn.2d 186, 190–91, 607 P.2d 304 (1980); *see Chapman v. California,* 386 U.S. 18, 23–24, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967). The constitutional error cannot be declared harmless unless it was "harmless beyond a reasonable doubt.'" *State v. Stephens, supra* at 191. An error in instructions is harmless only if it "in no way affected the final outcome of the case." *State v. Wanrow,* 88 Wn.2d 221, 237, 559 P.2d 548 (1977); *State v. Golladay,* 78 Wn.2d 121, 139, 470 P.2d 191 (1970).

We cannot conclude beyond a reasonable doubt that the constitutional error in the jury instructions did not in any way affect the final outcome of the case. The State's evidence of intent to kill was circumstantial only. The State's witnesses only recounted the petitioner's actions in drawing a pistol and shooting the victim, John Parmon, in the jaw. Petitioner's action and the injury which Parmon sustained are just as consistent with an intent to injure as an intent to kill. Witnesses for the State did not supply any motive for intending to kill Parmon, from which a jury might have inferred intent to kill. The only indication of a motive for the action of shooting Parmon was Parmon's testimony that Myrtle Sinclair stated to the petitioner that Parmon caused her to lose some heroin. There was not demonstrated a clear motive for intending to kill Parmon rather than merely injure him. Accordingly, it appears likely that the jury would have applied the erroneous presumption

instruction in determining intent to kill. Since the error could well have affected the final outcome of the case, we cannot conclude that the error was harmless beyond a reasonable doubt. *See State v. Sandstrom,* ___ Mont. ___, 603 P.2d 244, 245 (1979) (on remand from *Sandstrom v. Montana,* 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450 (1979)); *cf. Holloway v. McElroy,* 474 F. Supp. 1363, 1370 (M.D. Ga. 1979).

The conviction of first degree assault is reversed and the case is remanded for a new trial solely on the count of first degree assault.

HOROWITZ, DOLLIVER, and WILLIAMS, JJ., concur.

HICKS, J. (concurring)—The initial sentence of the instruction here concerned states, "The court instructs the jury that the law presumes that every man intends the natural and probable consequences of his own acts." The word "presume" means that a fact is "assumed to be true in the absence of proof to the contrary." *The Heritage Dictionary and Information Book* (1977). In this case the presumption that a "man intends the natural and probable consequences of his own act" may be taken to be true without further proof.

As an original proposition, the idea that one intends the natural and probable consequences of his acts does not appear particularly startling. The ordinary experience of virtually everyone would lend credence to the statement. Consequently, it has long been used as an instruction given to the jury in both civil and criminal cases. Now, however, the United States Supreme Court has decreed otherwise in criminal cases when the fact so presumed (intent) is an essential element of the crime charged. *Sandstrom v. Montana,* 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450 (1979).

Given the decisions of the high court, which we are compelled to follow, I would simply forego the use of the presumption instruction in a criminal case. Its use must be so circumscribed and the explanation of that use so involved,

it seems to me the instruction becomes more confusing than illuminating to the jury.

Certainly, in this case the "presumption" sentence was not indispensable to the guidance of the jury. Without it, the instruction would read:

> It is not necessary to establish intent by direct and positive evidence but intent may be established by inference and in the same way as any other fact by taking into consideration the acts of the parties and all the facts and circumstances of the case.

It seems to me that phrased that way, the instruction would offer sufficient guidance to the jury and it would not run afoul of the Supreme Court proscription.

If trial court instructions are phrased in terms of permissible inference rather than that of presumption, I venture that verdicts of juries would be little different than under past practice. In this instance, I agree with Justice Rosellini's dissent that in a retrial, given a reasonable jury, the result will be the same as in this case. Nonetheless, it seems to me that we are required to grant a new trial. Therefore, I concur with the majority.

BRACHTENBACH, J., concurs with HICKS, J.

ROSELLINI, J. (dissenting)—The jury was told to consider all the instructions together. The instructions as a whole made it clear to them that the burden was on the State to prove every element of the crime beyond a reasonable doubt. If the first sentence of the instruction objected to clouded that burden for a moment, the cloud was removed in the language of the remainder of the instruction, which made it plain that the presumption is rebuttable, and that the jury was to determine whether there was intent by examining all of the evidence.

The jury returned the only verdict supportable on the evidence. The majority's suggestion that in order to prove its case in chief the State must produce some evidence of intent to kill, in addition to that afforded by circumstances

of the crime itself, is unfounded in principle or precedent. The jury is entitled to draw inferences from those circumstances. An inescapable inference in the absence of some exculpatory evidence is that a person intends the probable consequences of his acts.

I would hold that, if there was some error in not instructing on the defendant's burden of rebuttal, the error was harmless. It is wasteful to order a new trial since, assuming another reasonable jury is impaneled, such a trial is bound to produce the same result.

STAFFORD and WRIGHT, JJ., concur with ROSELLINI, J.