[No. 17485–1–I.   Division One.   December 23, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. ROGER BERMAN, *Appellant.*

*Dori Jones* and *Julie A. Kesler* of *Washington Appellate Defender Association,* for appellant.

*David S. McEachran, Prosecuting Attorney, Ronald C. Hardesty, Special Deputy,* and *David Cottingham, Deputy,* for respondent.

RINGOLD, A.C.J.—The defendant, Roger Berman, was found guilty by a jury of three counts of first degree theft and one count of second degree theft. The sentence included an order for Berman to pay restitution. Berman appeals the judgment and sentence, assigning error to the giving of an instruction, his conviction on one of the counts, and part of the order of restitution.

Charges in this matter arose out of Berman's conduct in his business, The Computer Group. Berman misused funds from three customers and Whatcom State Bank.

The defendant was charged and convicted under count 1 for theft in the first degree for defaulting on $15,000 in loans from Whatcom State Bank. He made six interest payments before defaulting.

Ronald Morgan, loan officer at the bank, approved the loans. Morgan took a financial statement from Berman which showed a net worth of $73,500. Berman listed an as asset a house with $20,000 equity even though he had at best only a verbal option to purchase the house at $20,000

below market value. The house, however, was not collateral for the loan. Berman provided the bank with security interests in two automobiles.

Berman was also convicted of theft in the second degree on count 2. Dick Hansen prepaid Berman for two software programs, one for $1,500 plus tax, and the other for $710 plus tax. Berman never ordered the programs or refunded Hansen's money. He was charged and convicted only of theft of the $710, which the trial court ordered him to repay. Both parties agree, although there is no evidence in the record, that the court also ordered restitution to Hansen for the $1,500 program.

At trial, the only issue raised by Berman was whether he had possessed the necessary intent to commit the crimes.

The trial court instructed the jury that:

> A person acts with intent or intentionally when acting with the objective or purpose to accomplish a result which constitutes a crime.
>
> It is not necessary to establish intent by direct and positive evidence. Intent may be established in the same way as any other fact by taking into consideration the acts of the parties and all the facts and circumstances of the case.

Instruction 11.

Berman argues that the second paragraph of the instruction violated several established principles: (1) where the law governing a case is expressed in a statute, the court should limit its instructions to the language of the statute; and (2) instructions should only enunciate the basic and essential elements of the necessary legal rules. Any additional, specific elaborations may improperly emphasize certain aspects of a case and constitute a comment on the evidence by the court. In this case, according to Berman, the second paragraph of the court's instructions singled out the element of intent and informed the jury that intent need not be proven by direct and positive evidence. The defendant also maintains that the instruction suggested to the jury that it may set aside any reasonable doubts that

may have arisen from the lack of direct and positive evidence of intent.

The use of the instruction challenged by Berman has been affirmed in several decisions. In *State v. Caldwell,* 94 Wn.2d 614, 618 P.2d 508 (1980), the defendant was convicted of first and second degree assault. The Supreme Court reversed the first degree assault conviction due to an instruction containing a sentence concerning a legal presumption. The majority did not address the remainder of the instruction, which was virtually identical to instruction 11. Justice Hicks in his concurrence noted that the instruction, absent the impermissible "presumption" sentence, "would offer sufficient guidance to the jury and it would not run afoul of the Supreme Court proscription." *Caldwell,* at 620 (Hicks, J., concurring). Justice Rosellini, in dissent, believed that the instruction corrected whatever error the legal presumption sentence may have created by clarifying that among other things, "the jury was to determine whether there was intent by examining all of the evidence." *Caldwell,* at 620 (Rosellini, J., dissenting).

The court in *State v. Gibson,* 32 Wn. App. 217, 646 P.2d 786, *review denied,* 97 Wn.2d 1040 (1982), addressed whether a nearly identical instruction impermissibly shifted the burden of proof of intent to the defendant in a first degree assault case. The court found that the instruction did not shift the burden of proof and noted that the instruction was considered appropriate by the Supreme Court in *State v. Caldwell, supra. Gibson,* at 223.

■ Berman directs our attention to the sentence: "It is not necessary to establish intent by *direct and positive* evidence." (Italics ours.) Read in isolation this sentence appears to instruct the jury that it may find intent from less evidence than necessary to establish intent beyond a reasonable doubt. The criticized sentence does not, however, refer to the burden of proof. Instructions must be read in their entirety. *E.g., Brown v. Spokane Cy. Fire Protec. Dist. 1,* 100 Wn.2d 188, 668 P.2d 571 (1983). The next sentence of the instruction emphasizes that intent must be

proven by the same standard of proof as any other material fact. The instruction did not lessen the State's burden of proving intent beyond a reasonable doubt.[1]

The cases cited by Berman do not support his contention that the instruction was erroneous. In *Laudermilk v. Carpenter,* 78 Wn.2d 92, 457 P.2d 1004, 469 P.2d 547 (1969), the instructions, unlike instruction 11, were highly detailed as to specific facts of the case. *Shannon v. Pay 'N Save Corp.,* 104 Wn.2d 722, 709 P.2d 799 (1985) was similar. The challenged instruction focused the jury's attention on one type of statistical comparison in a race discrimination case. The instructions in *State v. Reed,* 25 Wn. App. 46, 604 P.2d 1330 (1979) and *State v. Jefferson,* 11 Wn. App. 566, 524 P.2d 248 (1974) were also inappropriately factually specific. In *Kirkland v. O'Connor,* 40 Wn. App. 521, 698 P.2d 1128 (1985), the court held that an instruction prohibiting the jury from considering a lack of evidence on a material element of the charge was an impermissible comment on the evidence. Instruction 11 did not contain an impermissible comment by the trial court and was not in error.

Berman next contends that he could not properly have been convicted of embezzlement under count 1, arising from Berman's default on loans from Whatcom State Bank, since the loan funds had belonged to him. The State responds only by citing and distinguishing *State v. Gillespie,* 41 Wn. App. 640, 705 P.2d 808 (1985).

Berman was charge with theft under RCW 9A.56-.020(1)(a), which defines "theft" as follows: "To wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him of such property or services . . ." "Wrongfully obtain or exert unauthorized control" means:

(a) To take the property or services of another;

---

[1] We do not, however, approve of the use of this instruction. It was unnecessary and added nothing to the case. The first paragraph of the instruction would have been sufficient.

(b) Having any property or services in one's possession, custody or control as bailee, factor, pledgee, servant, attorney, agent, employee, trustee, executor, administrator, guardian, or officer of any person, estate, association, or corporation, or as a public officer, or person authorized by agreement or competent authority to take or hold such possession, custody, or control, to secrete, withhold, or appropriate the same to his or her own use or to the use of any person other than the true owner or person entitled thereto . . .

RCW 9A.56.010(7). This offense, therefore, encompasses theft by taking and by embezzlement, *State v. Dorman*, 30 Wn. App. 351, 354–56, 633 P.2d 1340 (1981). The State's case rested upon theft by embezzlement.

■ Embezzlement requires the fraudulent or unlawful appropriation for one's own use property of another that has lawfully come into the taker's possession. RCW 9A.56-.010(7)(b); *State v. Gillespie, supra* at 643. Where a loan, however, is made upon a promissory note, title to the proceeds passes to the borrower when he or she signs the note. *Gillespie*, at 645. The *Gillespie* court held that Gillespie could not be convicted of embezzlement because he gained title to the loan proceeds when he signed a promissory note for that loan.

In *Gillespie*, a loan agreement was allegedly conditioned by an oral agreement that Gillespie would purchase a sailboat with the loan proceeds and provide the bank with a preferred maritime mortgage on it. Gillespie received the loan but never bought the boat, so the loan never was secured. After defaulting on the loan he was charged in the alternative with embezzlement, under RCW 9A.56.020-(1)(a), and convicted.

The State maintains that the *Gillespie* court found that the title to the loan proceeds passed to Gillespie due only to the absence of a security agreement or a vessel mortgage. Since Berman provided the bank with a security interest in at least one of his cars, the State argues that, according to *Gillespie*, absolute title to the loan proceeds did not pass to Berman.

The State misconstrues *Gillespie*. The loan agreement in *Gillespie* allegedly included an oral condition that Gillespie would give the bank a security interest in the boat. The court, however, found no evidence of such a condition. *Gillespie,* at 644. Therefore, the language relied upon by the State qualifying the court's holding, that title to the loan proceeds passed to Gillespie when he signed the note "in the absence of a security agreement", *i.e.,* an unfulfilled condition, *Gillespie,* at 645, is immaterial here. There is no allegation that Berman's loans were conditioned on providing security with the proceeds. The *Gillespie* holding that one cannot be convicted of embezzlement for defaulting on a loan since the title to the proceeds passes when the recipient signs the promissory note controls here and requires dismissal of count 1.[2]

We next consider whether the court erred in ordering restitution for an uncharged crime. Berman argues that he cannot be ordered to pay restitution for an uncharged crime. The State responds that the $1,500 restitution that Berman was ordered to pay in addition to the $710 was part of the same scheme for which he was convicted.

The record on appeal does not contain a copy of any order to pay restitution for an uncharged crime. Without a record of such an order, this court cannot know whether this order existed and may decline to consider the assigned error. *State v. Blight,* 89 Wn.2d 38, 46–47, 569 P.2d 1129 (1977). Both parties, however, agree that the court did make such an order, so we will consider the assignment of error.

---

[2]The State also argues that Berman was a mere bailee of the loan proceeds because title to the proceeds is voidable where a wrongdoer obtains title to property by false pretenses. If the State's theory of the case were that Berman made false representations by which he procured a loan he would not otherwise have received, Berman should have been charged with larceny by aid or color of deception under RCW 9A.56.020(1)(b). Berman was not so charged so any claims of misrepresentation in the loan application financial statement are immaterial to the charge against him. *Cf. Gillespie,* at 645 n.6.

■ If in fact the trial court did order Berman to pay $1,500 in addition to the $710 in restitution to Hansen, it was in error. RCW 9.95.210 reads in part that a trial court may impose restitution as a condition of probation "to any person or persons who may have suffered loss or damage by reason of the commission of the crime in question . . ." The scope of the restitution is limited to the precise offense as charged. *State v. Mark,* 36 Wn. App. 428, 675 P.2d 1250 (1984); *see also State v. Ashley,* 40 Wn. App. 877, 879, 700 P.2d 1207 (1985). In *Mark,* a pharmacist was convicted of grand larceny for submitting fraudulent reimbursement claims to the Department of Social and Health Services (DSHS). The trial court ordered Mark to pay $230,000 to the DSHS to cover payments improperly made to him over the 3–year period. Mark was charged and convicted, however, of grand larceny between June 1, 1975, and July 30, 1976, a 13–month period. The reviewing court held that Mark could be required to make restitution only for the amount of unjustified payments during the 13–month period. *Mark,* at 433.

*Mark* controls here if Berman has been ordered to pay restitution for amounts in addition to the crime charged. Berman was not charged with theft of $1,500 belonging to Hansen. He should not be required to pay that additional amount in restitution.

We affirm the use of instruction 11. We reverse (1) the judgment and sentence on count 1, and (2) the order of restitution for $1,500 to Hansen.

COLEMAN and PEKELIS, JJ., concur.

Review denied by Supreme Court April 5, 1988.