[No. 25557-6-I.   Division One.   April 13, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. KENNETH
RALPH JOY, *Appellant.*

*Dennis Benjamin* and *Lorraine Lee* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Peter Goldman, Deputy,* for respondent.

BAKER, J. — Kenneth Ralph Joy appeals his convictions on three counts of theft in the first degree and two counts of theft in the second degree, alleging the evidence was insufficient to sustain his convictions on one of two alternative means of committing theft on which the jury was instructed. We agree, and reverse and remand for a new trial.

I

Kenneth Joy is a cabinetmaker and handyman who entered into contracts to perform work in six residences and failed to complete the work. He was charged with four counts of theft in the first degree and two counts of theft in the second degree. A jury convicted him on all but one of the counts. The pertinent facts concerning the conviction counts are as follows.

Count 1. Joy entered into a written contract[1] to build and install cabinets for Betty and Clarence Peterson. He requested and received a payment of 75 percent of the contract price, or $4,431, in advance of beginning the work. Ms. Peterson testified that Joy did not state that the advance payment was for purchasing materials, but she and her husband assumed that it was. Mr. Peterson, on the other hand, testified that Joy did state he needed the money to buy materials. Joy neither installed the cabinets nor refunded the advance payment.

Count 2. For approximately 1 year Joy worked for Reuben Goldman as an occasional handyman doing repairs on Goldman's rental properties. The last such job involved installing new windows. By oral agreement, Joy was to tear

---

[1]The State's brief quotes the terms of a 1-page written contract used by Joy in each case except for count 2, where the contract was oral. However, none of the exhibits cited by the State are included in the record on review.

out the old windows and purchase and install new ones. Joy testified that he asked Goldman to prepay the amount needed to purchase the windows, but that Goldman's advance covered the cost of installation as well as purchase. Joy neither installed the windows nor returned the advance payment.

Count 3. Susan and Russell Hill contracted with Joy for the construction and installation of cabinets in their home. The contract was for a total price of $6,400, to be paid one-third down, one-third upon completion of the cabinet frames, and one-third upon completion of the entire job. The down payment was made and Joy began to work sporadically. Before the cabinet frames were completed, Joy requested the second payment, stating he needed more money for materials. The Hills complied, even though Joy had not completed the frames, because they wanted the job finished on time. When Joy subsequently asked for more money for materials, the Hills purchased the materials themselves directly from the supplier. Joy told them his work was delayed due to a back injury. Ms. Hill testified that Joy completed approximately one-third of the job. He refused to refund any payment, stating he needed it for medical bills. Joy told the Hills they would not be able to collect from him because he was going to file for bankruptcy.

Count 5. Eiko Condo contracted with Joy for almost $22,000 worth of renovations and cabinet work in her home, to be paid in one-third installments. After payments of the first one-third, Joy worked for approximately 5 days. After the second payment he worked an additional 5 or 6 days. Joy never completed the work or refunded any payment.

Count 6. Charles Love contracted with Joy for cabinet work. The total contract price was $3,704.85, to be paid in three installments. Joy did not explain why he needed the first installment before commencing work, but Love assumed it was to purchase materials. Love paid, but Joy neither did the work nor refunded the money.

After the State rested its case, Joy moved to dismiss the charges based on the State's failure to make a prima facie

case of embezzlement. Joy conceded the State had made a prima facie case of theft by deception. The court denied the motion.

Joy testified in his own defense, admitting the State's basic allegations but excusing his failure to fulfill the contracts or refund any money on the grounds of injury, depression, lack of time, ineptitude and receipt of warped materials. The jury was instructed on two alternative grounds for convicting Joy of theft: theft by embezzlement (RCW 9A.56.020(1)(a) and RCW 9A.56.010(7)(b)), and theft by color or aid of deception (RCW 9A.56.020(1)(b)). Joy appeals the judgment entered on the jury's general verdict of guilty on counts 1, 2, 3, 5 and 6.

## II

■ The test for sufficiency of the evidence in a criminal case is whether, after viewing the evidence most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980). "Theft" is defined in part as follows:

> (a) To wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him of such property or services; or
> (b) By color or aid of deception to obtain control over the property or services of another or the value thereof, with intent to deprive him of such property or services[.]

RCW 9A.56.020(1)(a), (b). Subsection (1)(a) includes what was embezzlement under prior law. *State v. Gillespie*, 41 Wn. App. 640, 643, 705 P.2d 808 (1985), *review denied*, 106 Wn.2d 1006 (1986). The term "wrongfully obtain or exert unauthorized control" within the theft statute is defined in pertinent part as:

> Having any property or services in one's possession, custody or control as bailee, factor, pledgee, servant, attorney, agent, employee, trustee, executor, administrator, guardian, or officer of any person, estate, association, or corporation, or as a public officer, or person authorized by agreement or competent authority to take or hold such possession, custody, or control, to secrete, withhold, or appropriate the same to his or her own

use or to the use of any person other than the true owner or person entitled thereto[.]

RCW 9A.56.010(7)(b). Embezzlement requires the fraudulent or unlawful appropriation of the property of another that came lawfully into the taker's possession. *State v. Berman*, 50 Wn. App. 125, 130, 747 P.2d 492 (1987), *review denied*, 110 Wn.2d 1019 (1988).

*State v. Oglesbee*, 24 Wn. App. 769, 603 P.2d 1275 (1979), *review denied*, 93 Wn.2d 1017 (1980) is the only reported case in which a construction contractor has been convicted of embezzlement under these statutes. In *Oglesbee*, the owner of a home construction company used progress payments received from a home-building contract to pay a supplier with whom he had an open account. The defendant had used this supplier on previous jobs, and knew that the supplier would apply the payment to the most delinquent of the defendant's accounts. Defendant's company filed for bankruptcy and the homeowners were left with $12,000 in construction liens on their home. Defendant was convicted of theft by embezzlement.

The Court of Appeals affirmed, holding that the defendant, as an independent contractor, had property in his possession, custody or control as a "person authorized by agreement . . . to take or hold such possession, custody, or control", and that he appropriated it "to the use of [a] person other than the true owner". *Oglesbee*, 24 Wn. App. at 771 (quoting RCW 9A.56.010(7)(b)). The court stated:

> We find most persuasive . . . the defendant's testimony that he had used part of the Lupfer draw money to pay unrelated corporate debts and intended to take the money to keep his corporation afloat. This evinces an intent to use Lupfers' money for purposes unrelated to payment of the debts incurred for the construction of Lupfers' house.

*Oglesbee*, 24 Wn. App. at 772. *Oglesbee* does not discuss whether the progress payments received by the defendant were his own property or the property of the Lupfers. RCW 9A.56.020(1)(a). The case has not been cited in any other reported decision.

■ "A fundamental principle of the common law is that one cannot steal his own property and the general rule, therefore, is that the ownership of the property alleged to have been embezzled must not be in accused[.]" 29A C.J.S. *Embezzlement* § 8, at 16 (1965). Our courts have applied this rule in contexts other than the one presented here. *See State v. Carr*, 169 Wash. 56, 13 P.2d 497 (1932) (piano dealer who contracted to sell piano to customer could not be convicted of embezzlement for failing to use advance payment to order the piano as promised, since advance payment was dealer's money, not customer's); *State v. Berman*, 50 Wn. App. at 131 ("one cannot be convicted of embezzlement for defaulting on a loan since the title to the proceeds passes when the recipient signs the promissory note"); *State v. Birch*, 36 Wn. App. 405, 675 P.2d 246 (1984) (a partner cannot be charged with embezzling partnership funds because such funds are not the property of another).[2] In *Carr*, the court stated:

> Mrs. Carr's obligation to Wyrick [customer] became only that of a debtor as for damages, upon her failure to perform her sale contract obligation. She did not receive the money in trust, but as her own, in part payment of the contemplated sale of the piano from her to him. *Her failure to use the advance payment upon the purchase price she would have to make in procuring the piano was not a misappropriation of Wyrick's money. It was her money in a legal sense. It is elementary law that one cannot steal or embezzle his own money so as to render himself criminally liable therefor.*
>
> . . . .
>
> The fact that Wyrick made an advance payment to Mrs. Carr upon the purchase price of the piano, for future delivery, it being understood that she did not then have the piano in stock, is not of itself any proof of an agency relation between them. That is only proof of the executory nature of their contract.

(Italics ours.) *Carr*, 169 Wash. at 62-63.[3]

---

[2]Subsequent to the decision in *Birch*, the Legislature amended the embezzlement statute specifically to include misappropriation of partnership funds by a partner. RCW 9A.56.010(7)(c).

[3]The embezzlement statute at issue in *Carr*, former Rem. Comp. Stat. § 2601, was substantially the same as the current embezzlement statute. It provided, in pertinent part:

Appellant cites cases from other jurisdictions addressing the question of advance payments to construction contractors and holding that the use of such payments for purposes other than the job for which they were received is not embezzlement, because title to the payments passes to the contractor. *Commonwealth v. Austin*, 258 Pa. Super. 461, 466, 393 A.2d 36, 38 (1978) (prosecution for theft by failure to make required disposition of funds received);[4] *Commonwealth v. Bartello*, 225 Pa. Super. 277, 280-81, 301 A.2d 885, 886-87 (1972) (prosecution for fraudulent conversion); *Lawson v. State*, 125 Miss. 754, 88 So. 325 (1921) (prosecu-

---

"Every person who, with intent to deprive or defraud the owner thereof —
". . . .
"(3) Having any property in his possession, custody or control, as bailee, factor, pledgee, servant, attorney, agent, employee, trustee, executor, administrator, guardian or officer of any person, estate, association or corporation or as a public officer, or a person authorized by agreement or by competent authority to take or hold such possession, custody or control, or as a finder thereof, shall secrete, withhold or appropriate the same to his own use or to the use of any person other than the true owner or person entitled thereto; or
". . . .
"Steals such property and shall be guilty of larceny."

[4]The State notes that Pennsylvania cases subsequent to *Austin* have distinguished that case and upheld convictions of construction contractors for theft by failure to make required disposition. *See Commonwealth v. Edwards*, 399 Pa. Super. 545, 559, 582 A.2d 1078, 1086 (1990) (contractor's conviction affirmed where he misappropriated advance payments on a contract requiring the application of funds received to the payment of all necessary construction expenses), *appeal denied*, 529 Pa. 640 (1991); *Commonwealth v. Robichow*, 338 Pa. Super. 348, 353, 487 A.2d 1000, 1003 (1985) ("[b]ecause the evidence clearly establishes that the advance money was fraudulently obtained at the inception of contracting, title did not pass to appellant, and appellant's possession of the money was '. . . property of another . . ..' "), *appeal dismissed*, 510 Pa. 418 (1986).
The State is correct that the Pennsylvania statute on theft by failure to make required disposition is sufficiently distinct from our embezzlement statute to render Pennsylvania cases under it of limited usefulness in interpreting the Washington statute. The pertinent element of the Pennsylvania crime is that the defendant obtained the property of another "[s]ubject to an agreement of known legal obligation upon the recipient to make specified payments or other disposition thereof". *Austin*, at 466 (quoting *Commonwealth v. Crafton*, 240 Pa. Super. 12, 16, 367 A.2d 1092, 1094 (1976). This appears to create broader criminal liability for breaches of contract than is permitted under the Washington embezzlement statute. *See State v. Carr, supra.*

tion for common law embezzlement). While the State is correct that these cases were brought under common law or statutes different than the Washington statute, they nevertheless address the requirement common to our statute that the property appropriated be property "of another".

In *Lawson*, where the contractor had represented to church officers that he would use their down payment to purchase lumber and material, the court stated:

> If the money was paid to appellant on the contract, instead of intrusting it to him as agent for the specific purpose of buying the material, then, of course, he was the owner of the money, and could not embezzle his own property; and the proof in this record shows no appropriation of funds intrusted as agent, but shows an appropriation of funds paid to the appellant upon the contract price for the building of the church.

*Lawson*, at 762. In *Austin*, the court held that the contractor's notations of "for materials" and "for labor" on receipts given for advance payments were insufficient to establish an agreement that the funds could only be used for "materials" or "labor" where the contract did not specifically allocate any amount for separate uses. *Austin*, at 466.

■ The State's argument essentially is that the advance payments were earmarked for the purchase of materials, so that the payments were entrusted to appellant as an agent and did not become his property. However, the payments here were advance payments pursuant to a contract, within the contract price. Under the cases cited above, this precludes an entrustment or agency relationship. *See Carr*, 169 Wn. App. at 62-63 (dealer did not receive advance payment in trust, but as her own property, in partial payment of the executory contract); *Bartello*, at 280 ("[h]ere clearly title passed to the appellant as the payments were within the contract price"); *Lawson*, at 761 (down payment "was paid to him on the contract price . . . and was to be credited on the contract, and the money was not turned over to him in trust for the specific purpose of purchasing the materials for the building").

The State points out that on counts 1, 2 and 3 appellant made representations that he would use advance payments

to purchase materials, and that on count 6 the client assumed this to be the case. As to count 6, the client's assumption is clearly insufficient to prove that the advance payment was given in trust to appellant and therefore remained the client's property. As to count 5, there was no evidence of either a misrepresentation or an assumption on the part of the client concerning the purpose of the down payment. Finally, even as to counts 1, 2 and 3, appellant's statements are insufficient evidence of an agency or trust relationship. *See State v. Carr, supra; Lawson v. State, supra.* Rather, his misrepresentations are evidence that funds may have been obtained by color or aid of deception. RCW 9A.56.020(1)(b). As this court stated in *Berman*:

> If the State's theory of the case were that Berman made false representations by which he procured a loan he would not otherwise have received, Berman should have been charged with larceny by aid or color of deception[.] . . . [A]ny claims of misrepresentation in the loan application financial statement are immaterial to the [embezzlement] charge against him.

*Berman*, 50 Wn. App. at 131 n.2.

Here, appellant was charged alternatively with theft by deception and theft by embezzlement. Embezzlement involves the misappropriation of property *lawfully* obtained; larceny involves the *unlawful* taking of property. *State v. Vargas*, 37 Wn. App. 780, 785, 683 P.2d 234 (1984). Appellant's use of misrepresentations to obtain advance payments was evidence that he obtained the payments unlawfully; it is insufficient to prove that the funds were entrusted to him as an agent rather than advanced to him as payment under the contract.

Our Supreme Court recently emphasized several principles pertinent to this case, albeit in a different context. In *State v. Pike*, 118 Wn.2d 585, 826 P.2d 152 (1992), the court overturned a conviction of theft by taking where the owner of an automobile removed it from a mechanic's lot without paying the repair bill. The court began with a statement of the general rule that "a person cannot steal his or her own property", *Pike*, at 590, and held that since no mechanic's lien existed, the mechanic did not have a superior posses-

sory interest to the defendant. *Pike*, at 593-94. The court found that the mechanic was a creditor on a general contractual debt, and that such a debt could not support a theft conviction.

> First, it does not satisfy the "property of another" element because Scofield [mechanic] has no possessory interest in the car, only a right to recover damages from Pike in a civil lawsuit. Second, mere breach of a contractual obligation to pay does not create criminal liability absent a specific statute, or contractual fraud. *See, e.g., [State v.] Polzin*, [197 Wash. 612,] at 619 [85 P.2d 1057 (1939)]; RCW 9A.56.020 (theft by color or aid of deception). We are loath to turn the criminal justice system into a mechanism for the collection of private debts.

*Pike*, at 595. We conclude that the evidence was insufficient to convict appellant of embezzlement. We decline to follow *Oglesbee* to the extent it is inconsistent with our conclusions.

### III

■ In *State v. Gillespie, supra*, the defendant was charged alternatively with theft by deception and theft by embezzlement. After finding that a conviction for embezzlement could not stand because the loan proceeds obtained by defendant were his own property, the court set aside the verdict, stating:

> when one is charged with having committed a crime by more than one method and there is a deficiency of proof as to one or more methods but the jury is, nevertheless, instructed as to those methods, the verdict must be set aside unless the court can ascertain that it was founded upon one of the methods with regard to which substantial evidence has been introduced.

*Gillespie*, 41 Wn. App. at 645 (quoting *State v. Carothers*, 84 Wn.2d 256, 265, 525 P.2d 731 (1974), *overruled on other grounds in State v. Harris*, 102 Wn.2d 148, 685 P.2d 584 (1984)).

As in *Gillespie*, it cannot be ascertained here which of the State's theories was the basis for the jury's general verdict.

It appears, in fact, that the verdict was based on the improperly submitted embezzlement charge. The jury sent the following inquiry to the judge: "Can the jury find the defendant guilty of theft by embezzlement (unauthorized control) without finding him guilty of theft by color or aid of deception?" The court answered in the affirmative, and a guilty verdict was returned. Under these circumstances, it is necessary to reverse the judgment and remand the cause for a new trial.

WEBSTER, A.C.J., and COLEMAN, J., concur.

Review granted at 119 Wn.2d 1018 (1992).