[No. 2848–3. Division Three. December 4, 1979.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLARD
B. OGLESBEE, JR., *Appellant.*

*Michael J. Padden* and *Tanksley, Richard, Padden,
Derr & Carroll,* for appellant.

*Richard W. Miller, Prosecuting Attorney,* for respondent.

ROE, J.—Defendant Willard Oglesbee was the president and owner of O. K. Construction, Inc. (O. K.), a residential home construction company. O. K. had a contract with Lynn Lupfer and wife to build a house. Lupfers obtained

financing through Lincoln Mutual Savings Bank. Payments were to be made to O. K. in draws from the bank as work progressed. The bank made the initial determination of how much of Lupfers' money to disburse to Oglesbee, and Lupfers made the ultimate determination. The O. K.–Lupfer contract provided:

> 3. Owner shall make progress payments, on account, of the contract price to Contractor, on the basis of applications for payment submitted to Owner by Contractor as the work progresses, and in accordance with the requirements for financing as set forth by Lincoln Mutual Savings Bank, Ritzville, Washington.
> The progress payments may be withheld if:
> . . .
> c. Contractor does not make prompt and proper payments for labor, materials, or equipment furnished by him;

O. K. had open accounts with various suppliers of labor and materials, and charges for all of O. K.'s work were routinely made to the same accounts. Using funds received from draws on Lupfers' account, defendant signed a $4,000 check to Kohler Tower United, Inc. (KTU), one of the creditors with whom O. K. had an open account. KTU had furnished material and labor for O. K. on the Lupfer house as well as on previous jobs. The $4,000 was applied to the most delinquent of O. K.'s account first, as was KTU's policy. The result was that none of the $4,000 was applied to the bills on Lupfers' house. Defendant knew this would be the result when payment was made. O. K., Inc., filed for bankruptcy and some $12,000 in construction liens were filed on Lupfers' house.

Oglesbee was charged by information with unlawful issuance of bad checks and theft in the first degree. He was convicted on the theft charge and appeals, alleging that, as a contractor, the theft statutes do not apply to him. He bases his conclusion on a 1975 legislative change in the statute.

RCW 9.54.080, repealed in 1975, stated:

Every person having entered into a contract to supply any labor or materials *for the value or price of which any lien might lawfully be filed upon the property of another,* who shall receive the full price or consideration thereof, or the amount of any account stated thereon, shall be deemed within the meaning of RCW 9.54.010(3), to receive the same as the agent of the party with whom such contract was made, his successor or assign, for the purpose of paying all claims for labor and materials supplied.

(Italics ours.)

Defendant was convicted under RCW 9A.56.020(1)(a) and .030(1)(a), enacted in 1975, which read:

(1) "Theft" means:

(a) To wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him of such property or services; . . .

RCW 9A.56.010(7)(b) states:

(7) "Wrongfully obtains" or "exerts unauthorized control" means:

. . .

(b) Having any property or services in one's possession, custody or control as bailee, factor, pledgee, servant, attorney, agent, employee, trustee, executor, administrator, guardian, or officer of any person, estate, association, or corporation, or as a public officer, *or person authorized by agreement* or competent authority to take or hold such possession, custody, or control, to secrete, withhold, or appropriate the same to his own use or to the use of any person other than the true owner or person entitled thereto;

(Italics ours.)

■■ Oglesbee contends that by repealing the former RCW 9.54.080, which made explicit provision for embezzlement liability of a contractor, the legislature evidenced an intent to repeal this liability. We disagree. The question before us is whether Oglesbee, as an independent contractor, is a "person authorized by agreement . . . to take or hold such possession . . . to the use of any person other than the true owner . . ."

The facts of this case are clear. Oglesbee, pursuant to the Lupfer–Lincoln Mutual Savings agreement and the O. K.–Lupfer agreement, took possession of draws on Lupfers' money in the bank. He used part of this money to pay KTU, which applied the money to debts owed by Oglesbee on other than Lupfers' house. The defendant argues strenuously that the check was given to KTU, that KTU applied the funds, and that he did not have the requisite criminal intent. The evidence shows that the defendant signed the check to KTU but that his wife had written and delivered the check. Testimony shows that it is KTU's standard policy to apply the money to the oldest debt first and that Oglesbee knew of that policy at the time he signed the check. Further, KTU would have set up separate accounts for each job had Oglesbee asked it to do so.

We find most persuasive, however, the defendant's testimony that he had used part of the Lupfer draw money to pay unrelated corporate debts and intended to take the money to keep his corporation afloat. This evinces an intent to use Lupfers' money for purposes unrelated to payment of the debts incurred for the construction of Lupfers' house. Testimony whether Lupfers knew about KTU's policy or whether Oglesbee or his wife instructed KTU to apply the money to Lupfers' account is controverted. These are questions of fact for the trier of fact, and when there is substantial evidence to support the outcome, this court will not substitute its judgment for that of the trier of fact. *Beeson v. Atlantic–Richfield Co.*, 88 Wn.2d 499, 503, 563 P.2d 822 (1977).

The judgment is affirmed.

GREEN, C.J., and McINTURFF, J., concur.

Reconsideration denied January 14, 1980.

Review denied by Supreme Court March 7, 1980.