[No. 59305-1.   En Banc.   April 29, 1993.]

THE STATE OF WASHINGTON, *Petitioner*, v. KENNETH RALPH JOY, *Respondent*.

*Norm Maleng, Prosecuting Attorney, Ivan Orton, Senior Deputy,* and *Peter Goldman, Deputy,* for petitioner.

*Lorraine Lee* of *Washington Appellate Defender Association,* for respondent.

BRACHTENBACH, J. — At issue is whether the evidence is sufficient to convict defendant contractor of embezzlement of funds paid by homeowners for remodeling and cabinet work.

"Embezzlement" refers to the statutory definitions cited hereafter.

Defendant was charged with six counts of theft, alternatively charged as theft by color or aid of deception and theft by exertion of unauthorized control over (embezzlement of) funds paid him by homeowners for contracting work. He was convicted of five counts. The other count was later dismissed and is not at issue. The jury instructions did not require unanimity as to which means of committing theft the jury found, nor did the special verdict form direct the jury to indicate a means it unanimously found. The Court of Appeals held that the evidence was insufficient to establish that defendant appropriated the property of another and therefore his convictions on an embezzlement theory could not be upheld. The Court of Appeals then reasoned that because the jury could have reached its verdict on the invalid embezzlement theory, remand and a new trial were required on the theft by deception theory. *State v. Joy*, 65 Wn. App. 33, 827 P.2d 1065, *review granted*, 119 Wn.2d 1018 (1992). We reverse the Court of Appeals as to three counts, and affirm as to the remaining two counts.

The facts underlying each of the five counts on which defendant was convicted are set out below.

Count 1. On October 2, 1986, Mr. and Mrs. Peterson and defendant entered into a written contract for kitchen cabinets to be built by defendant. Exhibit 1. The contract provided that defendant would provide all labor and material. Defendant asked for, and the Petersons paid him, 75 percent of the contract price, $4,431 of the total $5,908, in advance. Mr. Peterson testified that defendant told him defendant needed the down payment to buy materials for the Petersons' kitchen cabinets. Defendant stated he asked for the down payment "[t]o buy material and equipment." Verbatim Report of Proceedings (Oct. 24, 1989), at 66. He also testified that he spent some of the money for special equipment to build their kitchen and "a portion of it was held back for them to be spent later on." Verbatim Report of Proceedings

(Oct. 24, 1989), at 24, 66. The defendant did no work for the Petersons, nor did he ever return the money. We affirm conviction on this count.

Count 2. Mr. and Mrs. Goldman hired defendant to work on several jobs on their rental houses. They paid him for each job, generally after he completed the work. In late 1986 or January 1987, the Goldmans and defendant orally agreed that defendant would replace some windows in one of the rental houses. The Goldmans gave defendant $590 in advance of the work for removal of the old windows and purchase and installation of the new windows. Defendant testified "I explained to [Mr. Goldman] I was going to be doing the kitchen and I would like him to prepay the amount of the windows so I could get them ordered . . .". Verbatim Report of Proceedings (Oct. 24, 1989), at 19. Defendant testified the Goldmans paid the money in advance because he had worked for them before and they trusted him. Defendant testified he ordered the windows and put them in storage (although at trial he could not recall where), and that when he went to get them they were broken. He did not do the work or refund the money. We affirm conviction on this count.

Count 3. In March 1987, Mr. and Mrs. Hills entered into a written contract with defendant for cabinets to be built in a new home the Hills were constructing. The contract provided that defendant would provide all materials and labor. It called for the Hills to pay one-third of the $6,490 contract price down, one-third upon completion of the cabinet frames, and one-third upon completion of the work. Mrs. Hills testified that defendant said he would use the down payment to buy materials.

On June 9, 1987, defendant asked for the second one-third of the contract amount, although he had not completed the cabinet bases. The Hills made this early payment reluctantly because, Mrs. Hills testified, defendant said he did not have money to finish purchasing materials to finish the job. She testified that defendant said he was going to use the money specifically to buy the materials for their house. Shortly after the second payment was made, defendant indi-

cated he had suffered a back injury which prevented him from heavy lifting.

Defendant worked a few more days, then asked for more money for materials. The Hills, who had already given defendant over $4,300, elected to purchase the remaining materials and provide them to defendant. Defendant never returned to work, refused to complete the job, and refused to return any money to the Hills. Defendant said he did not return the materials for a refund because "[i]t wasn't my money." Verbatim Report of Proceedings (Oct. 24, 1989), at 98-99. We affirm conviction on this count.

Count 5. On May 26, 1989, Ms. Condo and defendant entered into a written contract for kitchen remodeling at a cost of $21,823.23. Exhibit 12. The contract provided that defendant would provide all materials and labor. One-third of the contract amount was to be paid down, another one-third upon commencement of the work, and the final one-third upon completion of the project. Defendant supplied Ms. Condo with a list of materials needed. Ms. Condo paid $6,700 down. Defendant began work on June 7, 1989, and received a second payment of $6,700 on June 12. Defendant worked a few more days. Defendant did not complete the work (Ms. Condo hired another contractor), and did not return any of the $13,400. Defendant used $4,000 of the first $6,700 for his contractor registration and bond. We reverse conviction on this count.

Count 6. On June 24, 1989, Mr. and Mrs. Love and defendant entered into a written contract for construction and installation of new cabinets at a cost of $2,906.26. Exhibit 34. The Loves paid $1,295 down. Mr. Love testified that he assumed the down was to buy materials but that there was no "official explanation" about what the money was for. The Loves were thereafter unable to locate defendant, and discovered that his places of business were vacant. Defendant never did any work, nor did he refund any money. Defendant testified he purchased some materials for the job. He also testified that he used the money the Loves gave him to pay his employees on June 30, 1989 (although they did no work

for the Loves). Defendant closed his business in early July. We reverse conviction on this count.

The jury was instructed on both theft by deception and theft by exerting unauthorized control over (embezzlement of) the funds defendant received from the owners. The instructions did not require unanimity as to which means the jury found. The jury returned a verdict convicting on all but count 4 for which no verdict was returned. The verdict form did not identify which alternative means of theft the jury found defendant committed as to any of the counts.

Defendant appealed, arguing that there was insufficient evidence to support his convictions on the embezzlement theory. The Court of Appeals agreed with defendant and reversed and remanded for a new trial.

The Court of Appeals reasoned that one cannot steal his or her own property, that title to the funds passed to defendant when paid to him, and that defendant therefore could not be convicted of embezzling the funds. The Court of Appeals rejected what it characterized as the State's argument: that the advance payments were earmarked for the purchase of materials and were thus entrusted to defendant as an agent who did not own the money. The Court of Appeals said "the payments here were advance payments pursuant to a contract, within the contract price. Under the cases cited above, this precludes an entrustment or agency relationship." *State v. Joy*, 65 Wn. App. 33, 40, 827 P.2d 1065, *review granted*, 119 Wn.2d 1018 (1992). The court then examined the evidence, and came to the conclusion that there was insufficient evidence of a trust or agency relationship as to all of the counts.

The State maintains that the Court of Appeals erred in holding that the evidence was insufficient to support defendant's convictions for theft by embezzlement. In reviewing the sufficiency of the evidence, the question is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980); *State v. Aver*,

109 Wn.2d 303, 310-11, 745 P.2d 479 (1987). "When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

RCW 9A.56.020 provides in relevant part:

> (1) "Theft" means:
> (a) To wrongfully obtain or *exert unauthorized control over the property* or services *of another* or the value thereof, with intent to deprive him of such property or services; or
> (b) By color or aid of deception to obtain control over the property or services of another or the value thereof, with intent to deprive him of such property or services . . ..

(Italics ours.) Defendant was charged under both the "exerts unauthorized control" and the "[b]y color or aid of deception" alternatives of the statute. The "exerts unauthorized control" alternative includes what was embezzlement under prior law. *State v. Dorman*, 30 Wn. App. 351, 354, 633 P.2d 1340, *review denied*, 96 Wn.2d 1019 (1981).

"[E]xerts unauthorized control" means in relevant part:

> (b) *Having any property* or services *in one's possession, custody or control as* bailee, factor, pledgee, servant, attorney, agent, employee, trustee, executor, administrator, guardian, or officer of any person, estate, association, or corporation, or as a public officer, or *person authorized by agreement or competent authority to take or hold such possession, custody, or control, to* secrete, withhold, or *appropriate the same to his or her own use* or to the use of any person other than the true owner or person entitled thereto . . ..

(Italics ours.) RCW 9A.56.010(7)(b).

The State argues that the contracts defendant had with the owners are agreements within the meaning of RCW 9A.56.010(7)(b), that there was sufficient evidence presented to the jury that those agreements restricted the use of the funds advanced to defendant to the purchase of materials, and that defendant did not become the unlimited owner of the funds, but possessed them subject to the limitations imposed by the agreement. The State reasons that defendant appropriated the funds to his own use contrary to the

restrictions imposed by contract and thereby committed theft by embezzlement. The State maintains that the Court of Appeals mischaracterized its argument as being that defendant became an agent of the homeowners.

Defendant maintains in part, however, that with repeal of former RCW 9.54.080, contractor liability for embezzlement was abrogated. Former RCW 9.54.080 expressly provided that the contractor was deemed to be an agent, within the meaning of the theft statute, of the party with whom the contract was made for the purpose of paying all claims for labor and materials supplied. *See, e.g., State v. McDonald*, 1 Wn. App. 592, 463 P.2d 174 (1969). Defendant reasons that because former RCW 9.54.080 specifically referred to the embezzlement statute, *see* former RCW 9.54.080 and Laws of 1909, ch. 249, §§ 352, 349, and former RCW 9.54.080 was repealed without modification of the embezzlement statute, the Legislature intended that contractor liability not survive repeal of former RCW 9.54.080.

This argument is unpersuasive. The effect of former RCW 9.54.080 was to deem the contractor an agent in all cases, so that the embezzlement statute would apply to create contractor liability. Under the present theft statutes, the State must prove that defendant's activity falls within the definition of "exerts unauthorized control" in RCW 9A.56-.010(7) — a contractor is not *deemed* to be in a relationship which satisfies part of the definition of "exerts unauthorized control". Thus, the former statute's repeal does not imply that contractor liability for embezzlement was abrogated.

Defendant also argues that the evidence is insufficient to support his convictions for theft by embezzlement.

Under the relevant statutes, theft requires that the relevant property or services be the "property of another". RCW 9A.56.020. This does not mean, however, that title must strictly be in the other person. RCW 9A.56.010(8) explains the concept of ownership which applies under the theft statutes:

> "Owner" means a person, other than the actor, who has possession of or any other interest in the property or services

involved, and without whose consent the actor has no
authority to exert control over the property or services . . ..

We recently explained that the meaning of the "property of
another" element of theft can be derived from this definition
of "owner". *State v. Pike*, 118 Wn.2d 585, 589, 826 P.2d 152
(1992). In *Pike* we said: "Thus, to constitute the property of
another, the item must be one in which another person has
an interest, and the defendant may not lawfully exert con-
trol over the item absent the permission of that other per-
son." *Pike*, at 590.

Here, the issue is whether the owners had an interest in
the money paid so as to meet the definition of "property of
another", and whether defendant appropriated that property
to his own use, contrary to agreements authorizing defend-
ant to hold possession of or control the money. If the particu-
lar agreement between the owner and defendant restricted
the use of the funds to a specific purpose, the owner would
have an interest in the money, *i.e.*, the application of the
money to the purpose for which it was entrusted to defend-
ant. *See generally* W. LaFave & A. Scott, *Criminal Law* § 89,
at 648 (1972) (embezzlement may occur where contractor
appropriates money, paid in advance on a contract, which is
earmarked to be used only for a construction purpose).

We conclude that as to three of the counts there is suffi-
cient evidence of a limitation in the agreements between the
owners and defendant that advance payments be used to
purchase materials for the contract work. The owners in
those cases had an interest in the money given to defendant
to hold for the purchase of those materials, and when defend-
ant used that money for other purposes, he appropriated the
funds to his own use and committed theft by embezzlement.

As to count 1, the jury was entitled to infer such an agree-
ment from Mr. Peterson's testimony that defendant told him
defendant needed the 75 percent of the contract price as a
down payment to buy materials for the Petersons' kitchen
cabinets, from defendant's statement that he asked for the
down payment "[t]o buy material and equipment", Verbatim
Report of Proceedings (Oct. 24, 1989), at 66, and from defend-

ant's testimony that he held a portion of the money back "for them to be spent later on", Verbatim Report of Proceedings (Oct. 24, 1989), at 24, 66. As to count 2, the jury could infer such an agreement from evidence that the Goldmans gave defendant $590 in advance of the work to purchase the new windows. Further, defendant testified that he explained to Mr. Goldman that he "was going to be doing the kitchen and I would like him to prepay the amount of the windows so I could get them ordered . . .." Verbatim Report of Proceedings (Oct. 24, 1989), at 19. Although defendant claimed to have purchased the windows, and claimed they had been broken, he could not recall where he stored them; the jury could conclude that his testimony that he purchased them was not credible in light of his testimony that he could not recall where he stored them. The standard for sufficiency of the evidence requires the evidence to be interpreted most strongly against the defendant, and although the evidence as to this count is weaker than the other two which we affirm, we conclude it was sufficient to take the embezzlement theory to the jury.

As to count 3, the jury could find an agreement restricting the advance payments to purchase of materials from the following evidence: Mrs. Hills testified that defendant said he would use the down payment to buy materials. Mrs. Hills also testified that when defendant asked for the second one-third of the contract amount, defendant said he did not have money to finish purchasing materials to finish the job. She further testified that defendant said he was going to use the money specifically to buy the materials for their house. The Hills then paid defendant the second one-third of the contract price. Defendant said he did not return the materials for a refund because "[i]t wasn't my money." Verbatim Report of Proceedings (Oct. 24, 1989), at 98-99.

There is ample evidence that defendant did not use all the funds for materials and that he appropriated money earmarked for materials to his own use.

As to the remaining two counts, however, we conclude that there is insufficient evidence to support a conviction of

theft by embezzlement. As to count 5, there was no testimony about what the parties agreed the money was to be used for, and the written contract does not restrict the use of the advance payments. The same is true as to count 6.

We therefore reverse the Court of Appeals as to counts 1, 2, and 3 and affirm defendant's convictions on those counts. In so doing, we comment on the Court of Appeals' analysis. First, we disapprove that analysis to the extent it may be construed as saying that absent a trust or agency relationship, a contractor cannot be guilty of embezzlement, and that a trust or agency relationship is precluded where the amounts are paid pursuant to a construction contract. The question is not one of agency or trust alone. The question is whether funds were received lawfully under agreements authorizing defendant to hold or control the advance payments in which the homeowners had an interest, but not authorizing defendant to exert control over the funds in a way inconsistent with the owners' permission to use the funds for materials. The key is whether there was a restriction or limitation in the agreements giving the owners an interest in having the funds applied to the purchase of materials. Such a restriction or limitation can clearly pertain to a construction contract payment within the contract price.

We recognize, however, that the Court of Appeals' opinion is not entirely clear, and perhaps is amenable to the interpretation that there was simply insufficient evidence of any limitation as to the use of the funds advanced.

Second, the Court of Appeals concluded that *State v. Carr*, 169 Wash. 56, 13 P.2d 497 (1932) supported its decision.

In *Carr*, the owner of a piano store received money in advance on a contract for a piano, which the buyer understood was needed as a down payment on the piano from the seller to the wholesaler. The seller did not use the funds in that way, however, and was charged with embezzlement of the funds. The court specifically addressed the question whether the seller was an agent of the buyer, within the meaning of the theft statutes. The court concluded that the

evidence did not establish an agency relationship, but instead established only a buyer-seller relationship. The court reasoned that Mrs. Carr's obligation to the buyer was only that of a debtor, and she was not guilty of misappropriating the funds because when she received the money it was hers in a legal sense. *Carr*, at 62.

The court in *Carr* addressed only the agency question, and never addressed the part of the theft statute at issue here, *i.e.*, whether the seller was authorized by an agreement to hold the funds of the buyer and then appropriated the funds to her own use. The "authorized by agreement" part of the statute was then in effect.

Defendant here was not charged with embezzlement of funds received as an agent, and *Carr* is not controlling authority.

Third, we address *State v. Oglesbee*, 24 Wn. App. 769, 603 P.2d 1275 (1979), *review denied*, 93 Wn.2d 1017 (1980). As the Court of Appeals noted, in *Oglesbee* a construction contractor was convicted of embezzlement under the same statutes as are at issue in this case. Division One in this case reasoned that Division Three in *Oglesbee* never addressed whether payments received by the defendant in *Oglesbee* were his own property or that of the homeowners. In any case, the Court of Appeals in this case declined to follow *Oglesbee* to the extent it was inconsistent with its analysis in *Joy*.

In *Oglesbee* the defendant was a general contractor who, under a home-building contract between the homeowners and their bank, received progress payments conditioned on the prompt payment by the contractor for labor and materials supplied by others. Defendant owed money on an open account with a supplier, which had furnished materials and labor on the homeowners' house and on other jobs. Using money from draws from the homeowners' bank, defendant paid $4,000 to the supplier, which applied the money to defendant's most delinquent accounts first, as defendant knew it would. As a consequence, none of the homeowners' money was applied to

bills on their house. Defendant declared bankruptcy and the homeowners were left with construction liens on their home.

Defendant Oglesbee was charged with theft in the first degree and convicted. He appealed, arguing that the theft statutes did not apply, on the grounds that repeal in 1975 of former RCW 9.54.080 which expressly provided for embezzlement liability of a contractor indicated legislative intent that such contractor liability was repealed. The Court of Appeals rejected this argument, reasoning that the issue was whether defendant could be convicted under the theft statutes, RCW 9A.56.020 and .010(7)(b). The court affirmed defendant's conviction. The court found significant that there was evidence that defendant took possession of the draws pursuant to the agreement between the homeowners and their bank. The court noted that defendant used part of the money to pay the supplier, and that he knew the supplier's policy was to apply the payment to the oldest debt first. There was evidence that the supplier would have set up a separate account for the job if requested to do so. The court found persuasive the fact defendant testified he used part of the draw account to pay unrelated corporate debts and intended to take the money to keep his corporation afloat. The court noted that some of this evidence was controverted, and resolution of the conflicts was for the trier of fact.

*Oglesbee* is consistent with our analysis herein. The issue there was whether defendant took possession of the funds pursuant to agreement, and then unlawfully appropriated those funds to his own use rather than paying the supplier according to restrictions in the agreement.

As to the two counts on which we affirm the Court of Appeals' reversal of defendant's convictions for embezzlement, the remaining question is whether remand for retrial is appropriate. After the Court of Appeals held that there was insufficient evidence to sustain defendant's convictions on the embezzlement theory, the court determined that remand for

a new trial on the theft by deception theory was necessary. The court relied upon the rule that

> when one is charged with having committed a crime by more than one method and there is a deficiency of proof as to one or more methods but the jury is, nevertheless, instructed as to those methods, the verdict must be set aside unless the court can ascertain that it was founded upon one of the methods with regard to which substantial evidence has been introduced.

*Joy,* at 42 (quoting *State v. Gillespie,* 41 Wn. App. 640, 645, 705 P.2d 808 (1985), *review denied,* 106 Wn.2d 1006 (1986) (quoting *State v. Carothers,* 84 Wn.2d 256, 265, 525 P.2d 731 (1974), *overruled in part on other grounds to extent inconsistent in State v. Harris,* 102 Wn.2d 148, 685 P.2d 584 (1984))).

When the State petitioned for review, we directed the parties to brief *Griffin v. United States,* ___ U.S. ___, 116 L. Ed. 2d 371, 112 S. Ct. 466 (1991). There, the United States Supreme Court applied a different rule under the federal due process clause, *i.e.,* reversal is not required where the invalidity of a conviction via one means is due to factual insufficiency of the evidence, provided there is sufficient evidence to support another means charged. The parties provided the briefing.

However, at oral argument the State asked that we not address *Griffin,* explaining that applicability of the analysis there had not been raised as an issue in this case. In light of the issues raised by the parties, we have decided not to address *Griffin* in this case.

Therefore, we remand counts 5 and 6 for retrial on the theft by deception theory. *Carothers,* at 265; *see also State v. Green,* 94 Wn.2d 216, 616 P.2d 628 (1980).

Affirmed in part, reversed in part, and remanded for retrial on counts 5 and 6.

ANDERSEN, C.J., and UTTER, DURHAM, SMITH, GUY, JOHNSON, and MADSEN, JJ., concur.