# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73332-0-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| LESLEY ALEXANDRA VILLATORO, | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: April 3, 2017 |
| | ) | |

Cox, J. — A jury convicted Lesley Villatoro as an accomplice to attempted first degree murder, first degree burglary, first degree robbery, and three counts of first degree kidnapping. The evidence was sufficient to support the jury verdicts on these crimes. During this appeal, the trial court entered findings of fact and conclusions of law on the admission of certain evidence. So, there is no need to address the absence of such findings and conclusions prior to the appeal. We do not reach the claim of error, which Villatoro makes for the first time on appeal, that the trial court failed to give a jury instruction that she did not request below. The State properly concedes that it is not entitled to costs on appeal. We affirm.

Villatoro and Chad Horne began dating in 2012 when they lived in Arizona. They fell on hard financial times and moved to Washington, where they lived at the home of Jamie Cumbia, Horne's sister.

In February 2013, Villatoro gave birth to twins, fathered by Horne. Neither Villatoro nor Horne had steady employment during this time. They continued to live at Cumbia's home. They generally kept to themselves.

Shortly before commission of the crimes in this case, Villatoro and Horne purchased a duffel bag, duct tape, and bleach. Villatoro also purchased a gas can and another duffel bag. The State claimed at trial that these items were used or were going to be used in committing the crimes in this case.

On May 2, 2014, Villatoro drove Horne to the area near Stephanie Baker's home and dropped him off there. While doing so, she opened the car trunk and Horne removed something from it. She then drove to a park nearby with her children and Cumbia's child and waited for Horne.

Meanwhile, Horne forced his way into Baker's home. She and her two children were present. He pointed a gun at her and asked her about the key to her vehicle, a Tahoe, parked in front of her home. Horne directed Baker to start the Tahoe while he remained inside with her two children.

Horne later restrained Baker with zip ties, placed her youngest child in another room, and directed her eldest child to stay in that room. He then returned to Baker and, while she was restrained, cut her throat with a knife. He also shot at her. However, the bullet did not hit her. Horne fled the scene in Baker's Tahoe.

2

Despite her severe injury, Baker survived and sought help from a neighbor. The neighbor called 911. Baker survived these events and testified at trial.

Police officers responded to the 911 call from Baker's neighbor. They identified the stolen vehicle Horne was driving and a high speed chase followed. Horne drove past Villatoro's location with police in pursuit. They eventually stopped him. He died from a self-inflicted gunshot wound to the head.

Police interviewed Villatoro on the day of the crimes and taped the interview.

The State charged Villatoro as an accomplice to Horne's crimes. Specifically, the charges included one count of first degree burglary, three counts of first degree kidnapping, one count of first degree attempted murder, and one count of first degree robbery.

At trial, police officials and others testified. The recordings of Villatoro's interview were played at trial. She exercised her constitutional right to not testify. The jury found her guilty as charged. The trial court entered its judgment and sentence on the jury's verdicts.

Villatoro appeals.

## SUFFICIENCY OF EVIDENCE

Villatoro argues that insufficient evidence supports the six convictions as an accomplice to Horne's crimes. We hold that the evidence was sufficient to support the jury's verdicts.

3

Due process requires the State to prove every element of a crime beyond a reasonable doubt.[1] The test for a sufficiency challenge is "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[2] An insufficient evidence claim "admits the truth of the State's evidence and all reasonable inferences from that evidence."[3]

Circumstantial evidence can be as reliable as direct evidence.[4] But "inferences based on circumstantial evidence must be reasonable and cannot be based on speculation."[5] A jury's "verdict does not rest on speculation or conjecture when founded on reasonable inferences drawn from circumstantial facts."[6]

In Washington, an accomplice is not required to "'have specific knowledge of *every element* of the crime committed by the principal, provided he has general knowledge of that specific crime.'"[7] Further, "'[t]he crime' means the charged crime, but because only general knowledge is required, even if the

---

[1] State v. Rodriquez, 187 Wn. App. 922, 930, 352 P.3d 200, review denied, 184 Wn.2d 1011 (2015).

[2] State v. Joy, 121 Wn.2d 333, 338, 851 P.2d 654 (1993).

[3] Rodriquez, 187 Wn. App. at 930.

[4] Id.

[5] State v. Vasquez, 178 Wn.2d 1, 16, 309 P.3d 318 (2013).

[6] Lamphiear v. Skagit Corp., 6 Wn. App. 350, 356, 493 P.2d 1018 (1972).

[7] In re Pers. Restraint of Domingo, 155 Wn.2d 356, 365, 119 P.3d 816 (2005) (quoting State v. Roberts, 142 Wn.2d 471, 512, 14 P.3d 713 (2000)).

charged crime is aggravated, premeditated first degree murder . . . , 'the crime' for purposes of accomplice liability is murder, regardless of degree."[8]

We defer to the jury on questions regarding conflicting evidence, witness credibility, and the persuasiveness of evidence.[9]

Here, the trial court gave the jury the following unchallenged accomplice instruction:

> A person is guilty of a crime if it is committed by the conduct of another person for which he or she is legally accountable. A person is legally accountable for the conduct of another person when he or she is an accomplice of such other person in the commission of the crime.
>
> A person is an accomplice in the commission of the crime if, *with knowledge that it will promote or facilitate the commission of the crime charged*, he or she either:
>
>     . . . .
>
> (2) *aids or agrees to aid another person in planning or committing the crime charged.*
>
> The word "aid" means all assistance whether given by words, acts, encouragement, support, or presence. . . .
>
> A person who is an accomplice in the commission of a crime is guilty of that crime whether present at the scene or not.[10]

There was sufficient evidence for the jury to find beyond a reasonable doubt that Villatoro was Horne's accomplice to commission of the charged felonies.

---

[8] Sarausad v. State, 109 Wn. App. 824, 835, 39 P.3d 308 (2001).

[9] Rodriguez, 187 Wn. App. at 930.

[10] Clerk's Papers at 223 (emphasis added).

Notably, Villatoro does not challenge on appeal the sufficiency of the evidence to show that Horne acted as a principal for the crimes for which she was found guilty as his accomplice. She concedes in her briefing that Horne "invaded Stephanie Baker's home, kidnapped her and her children, slit Baker's throat, tried but failed to shoot her in the head, and then fled in Baker's car."[11] Accordingly, the primary focus of this appeal is whether Villatoro had the requisite knowledge of the charged crimes and aided Horne in committing these crimes.

It is undisputed that Villatoro drove Horne to the scene of the crimes and dropped him off near Baker's home. From there, he forcibly entered Baker's home, displaying a gun. He then committed the other crimes at the scene before stealing her Tahoe.

What Villatoro knew when she dropped him off near the scene of the crimes is the primary disputed issue. The evidence at trial included videotapes of Villatoro and Horne purchasing a black duffel bag several weeks before the crimes committed against Baker and her children. Baker testified at trial to seeing such a duffel bag in her home. The evidence also showed that this duffel bag contained zip ties, a knife, bullets, and duct tape. A jury could reasonably infer from this evidence that this duffel bag contained items used in the crimes Horne committed against Baker and her children.

Videotape and other evidence also established that Villatoro purchased a gas can and another black duffel bag several weeks prior to the crimes Horne

---

[11] Brief of Appellant at 1.

committed against Baker and her children. She was also present when Horne purchased bleach. The State presented evidence at trial that the bleach could be used to destroy DNA. A jury could reasonably infer from this evidence that Villatoro knew that these items were intended for use in the crimes Horne committed against the victims. This is particularly true when the evidence showed that Horne and Villatoro had no other use for these items where they lived. Moreover, a search of Villatoro's vehicle trunk revealed a backpack, a full five gallon gas can, another bottle of bleach, a change of men's clothing and shoes, a pair of gloves, and a scanner, that the State argued was a police scanner. A jury was entitled to reasonably infer that she knew of these items in the trunk and that they were to be used in connection with the crimes.

Additionally, the evidence showed that Villatoro saw Horne put the black duffel bag in the trunk of the car she used to drive him to the scene of the crimes. The evidence also showed that the two kept pretty much to themselves. A jury could reasonably infer that she knew what was in the duffel bag when Horne put it into the trunk of her car. While she claimed that she did not know what Horne took out of the trunk when she opened it, the jury was not required to believe her. Rather, it could reasonably infer that she knew he was taking the duffel bag, and its contents, and that she provided him access to those items by opening the trunk of her car.

Police interviewed her on the day of the crimes, following Horne's death. She denied knowledge of the purchase of the black duffel bags. This sharply conflicts with the videotaped and other evidence showing their purchase of these

items within a short time prior to the crimes. A jury was entitled to reasonably infer that she did not tell the truth in an effort to conceal her knowledge and participation in the crimes.

There was also other evidence to show Villatoro's knowledge of the crimes. Villatoro told police that she planned to wait for Horne at the park near Baker's residence for thirty minutes to take him back home. She heard ambulance sirens but did not hear from Horne. Horne drove past Villatoro's location with police in pursuit. Villatoro later left the scene and returned home. The jury could reasonably infer that she knew of Horne's crimes and sought to flee the scene in view of the developments.

Later that afternoon following her departure, Villatoro checked the online news, something she had not done during the previous month. There, she read a report about the police chase of what turned out to be Horne, which ended in his death. A jury was entitled to reasonably infer from these actions that she knew of Horne's crimes and soon learned about his whereabouts after police were notified and began pursuit.

Despite all this, she never informed Horne's sister of these unfolding events, despite their conversations throughout the day. The jury could reasonably infer from Villatoro's checking of the online news and her failure to share the developing news with Horne's sister that Villatoro had participated in the crimes as Horne's accomplice.

During closing below, Villatoro argued to the jury that there were contrary inferences to be drawn from the evidence. For example, she argued that

8

contrary inferences arose from her recorded interviews with police. But the jury did not, and was not required to, accept these arguments. As the finder of fact, the jury was entitled to reach the verdicts that it did.

On appeal, Villatoro takes a similar approach. Her characterization of the evidence as circumstantial does nothing to undermine the sufficiency of the evidence. That is because there is direct evidence from which the jury could base its decision.

Likewise, Villatoro may call the evidence speculative but, as we have discussed, it was not so.

Finally, Villatoro's argument that another person—Rocky Chervonock— could have been an accomplice does nothing to address application of the correct review standard to this record. Accordingly, we need not deal any further with that argument.

In sum, there was sufficient evidence of Villatoro's guilt beyond a reasonable doubt for each of the charged crimes. Dismissal is not warranted.

## WRITING FINDINGS AND CONCLUSIONS

Villatoro argues that the trial court violated CrR 3.6 by failing to enter written findings of fact and conclusions of law as required by the rule. But such findings and conclusions have been entered since the initiation of this appeal. She does not challenge them, and we need not further address this point on appeal.

## JURY INSTRUCTION

Villatoro argues that the trial court failed to give an instruction that she did not request below. Because this claim of error is not manifest, we do not reach it.

She contends that the trial court failed to instruct the jury that all twelve jurors must be involved during deliberations and that this failure violated her right to a fair trial and unanimous verdict.

Under RAP 2.5(a)(3), a party may raise, for the first time on appeal, a manifest error affecting a constitutional right.[12] An alleged error regarding lack of juror unanimity is of constitutional magnitude and, thus, may be raised for the first time on appeal.[13]

### Manifest Error

The issue is whether this error is manifest. We conclude that it is not.

The party "must identify the constitutional error and show that it actually affected his or her rights at trial" in order to claim a manifest error affecting a constitutional right.[14] This requires that the party "make a plausible showing that the error resulted in actual prejudice, which means that the claimed error had practical and identifiable consequences in the trial."[15] "If the facts necessary to

---

[12] See also State v. Lamar, 180 Wn.2d 576, 582, 327 P.3d 46 (2014).

[13] See State v. Stockmyer, 83 Wn. App. 77, 86, 920 P.2d 1201 (1996).

[14] Lamar, 180 Wn.2d at 583.

[15] Id.

adjudicate the claimed error are not in the record on appeal, no actual prejudice is shown and the error is not manifest."[16]

Here, this record shows that the trial court gave the jury unchallenged instructions on their duty to deliberate. There is nothing in this record to show what went on in the jury room. Thus, we simply do not know whether any of the claims Villatoro makes on appeal are real in this case. Absent such a showing, her assertions are entirely speculative, not manifest. Thus, she failed to establish a right to relief under RAP 2.5(a).

## COSTS

The State properly concedes that it is not entitled to an award of costs on appeal. Accordingly, we deny any such an award.

We affirm the judgment and sentence and deny any award of costs to the State.

_Cox, J._

WE CONCUR:

_Trickey, A.C.J._

---

[16] State v. McFarland, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995).

11