IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 77863-3-I |
| Respondent, | |
| v. | DIVISION ONE |
| ROBERT NICHOLAS POUNDS, | UNPUBLISHED OPINION |
| Appellant. | FILED: June 10, 2019 |

SMITH, J. — A jury convicted Robert Pounds of theft of a firearm and of unlawful possession of a firearm. Pounds appeals his convictions on the ground of insufficiency of evidence. Because the evidence is sufficient to support both convictions, we affirm.

## FACTS

In 2017, 79-year-old William Hansen lived alone in a house in SeaTac. Over the course of his life, Hansen collected nearly two dozen rifles and handguns that he stored in a locked metal cabinet located in his bedroom.

Huong Vuong, an across-the-street neighbor, occasionally checked in on Hansen. On May 29, 2017, Vuong felt strange about a woman she saw outside Hansen's home, so Vuong took several pictures of the woman and a black Toyota Celica the woman drove.

On June 5, 2017, Kimberly Ausbun, Hansen's acquaintance, was visiting him.[1]  Hansen left Ausbun at his home by herself while he drove to a bank in Kent.  Vuong, who was holding a yard sale in front of her home, saw Hansen leave his home.

About 15 minutes after Hansen departed, Vuong saw a man park his red minivan near Hansen's house, with the front end facing Vuong's home and the rear facing Hansen's.  The man then browsed Vuong's yard sale while Ausbun stood near the street and introduced herself to Vuong as "Kim."  The man took a lawn mower that Vuong was giving away for free and pushed it to his minivan.  As the man pushed the lawn mower away, Ausbun told the man something akin to "'I forgot my keys.'"  Ausbun and the man hurried off and entered Hansen's house.  At that point, Vuong stood in her front yard and watched Hansen's house for a little bit.

Vuong next saw the man running from the back door of Hansen's house, carrying a hefty bundle of something wrapped in fabric, towards the minivan.  As the man hurried to the minivan, his eyes looked around cautiously as if to see if anyone was watching.  The man placed the bundle into the back of the minivan and then ran back into the house.  Finding these activities very suspicious and strange, at 1:58 p.m. Vuong called 911 to report a burglary in progress.

Minutes later, at 2:06 p.m., the first of multiple King County sheriff's deputies arrived at Hansen's house for a burglary in progress.  The deputies surrounded Hansen's house and one used a patrol vehicle's loudspeaker to hail

---

[1] Ausbun stayed with Hansen occasionally and had a key to his house.

the persons inside Hansen's house to come out. Ausbun exited Hansen's house first, and the man exited several minutes later. Deputies detained the man in a patrol vehicle and identified him as Robert Pounds. While clearing Hansen's house and checking for additional suspects, deputies observed an open gun cabinet in the bedroom and saw several rifles laying on the bed.

While deputies were speaking with Ausbun and Pounds, Hansen returned home from the bank. Hansen informed the deputies that Ausbun had permission to be in the house and insisted that his guns were locked away in the cabinet. Hansen kept the only key to the gun cabinet in his pocket. He refused to go inside with the deputies to inspect his gun cabinet. Deputies then released Ausbun and Pounds.

A King County sheriff's sergeant last saw Pounds in the driver's seat of the red minivan while Ausbun was outside talking to Hansen. Vuong later saw Pounds and Ausbun leave together in the red minivan. The last deputy to leave the scene—after Pounds and Ausbun drove away—departed Hansen's house at 2:45 p.m.

Shortly thereafter, Hansen entered his home and discovered his gun cabinet had been forced open and most of his guns were missing. At 3:08 p.m., Hansen called 911 to report the theft.

At 4:24 p.m., a deputy returned to Hansen's home to take a report. Hansen showed the deputy that the gun cabinet had been pried open, possibly with a crowbar from his garage that was left behind on the bed. Two rifles were left on the bed and another rifle was left on the floor. The cabinet was mostly

cleaned out. From memory, Hansen gave the deputy a list of many of the makes and calibers of his missing guns. Among the 10 firearms identified on Hansen's list of missing guns were three revolvers: a Harrington & Richardson .22-caliber revolver, a Colt .22-caliber revolver, and a Ruger .357-caliber revolver.

At 5:13 p.m., another deputy who had been responding to a medical emergency within five minutes of Hansen's house, responded to a report of an abandoned vehicle.[2] According to nearby residents, a female driver noticed the medical emergency activity, turned into their driveway, exited the vehicle, and ran through their backyard.

Upon arrival, the deputy noticed the abandoned black Toyota Celica, with its windows down and doors unlocked, damaged ignition, and missing stereo. The deputy suspected the vehicle was stolen, and he could not reach the registered owner. While impounding the Toyota Celica and inventorying its contents, the deputy discovered a backpack in the trunk that contained three handguns: a Harrington & Richardson .22-caliber revolver; a Colt .22-caliber revolver, and a Ruger .357-caliber revolver. Later that evening, the deputy conducted a search that revealed Hansen to be the registered owner of the Colt .22-caliber revolver.

On June 8, 2017, a sheriff's detective began investigating Hansen's stolen firearms. The detective interviewed Vuong and Hansen, and showed photo montages containing Pounds and Ausbun to the residents who had witnessed

---

[2] This deputy had not been involved in responding to the earlier burglary-in-progress call.

the woman abandon the Toyota Celica, but they were not able to make any identifications.

On June 13, 2017, the detective and his sergeant went in search of Pounds to arrest him and located him driving the red minivan in between Burien and Seattle. Upon arrest, the detective found a single round of .22-caliber ammunition in Pounds' pants pocket. The detective also saw Ausbun walking with another woman nearby.

After obtaining a search warrant, on June 14, 2017, the detective and sergeant searched the red minivan and collected various items, including a wallet containing bank cards in Pounds' name, Pounds' driver's license, an Olympic .22-caliber pistol, two loaded magazines that fit the pistol, ammunition contained in the magazines, a green military-style ammunition can that contained old gun-cleaning supplies, and a brown rifle-cleaning kit.

On August 4, 2017, the State charged Pounds with unlawful possession of a firearm in the first degree (count 1) and theft of a firearm (count 2). The bifurcated trial commenced before a King County jury on November 2, 2017.[3] The State called several witnesses to testify at trial, including Vuong, Hansen, and several King County sheriff's officers.

At trial, Vuong testified that the woman she photographed on May 29, 2017, who drove a black Toyota Celica was the same woman who identified herself as "Kim" on June 5, 2017. Vuong also testified that she did not see

---

[3] In phase I of trial, the court tasked the jury with rendering a verdict on count 2 (theft of a firearm), while in phase II, the court asked the jury to render a verdict on count 1 (unlawful possession of a firearm).

anybody else besides Hansen go into his house after Ausbun, Pounds, and the sheriff's officers left the scene.

In pertinent part, Hansen testified that when he went to the bank on June 5, 2017, his gun cabinet was locked and nothing was on his bed. He explained to the jury that although he left Ausbun in his house to take a shower that day, he did not give her permission to have anyone else at the house in his absence. Upon his return from the bank, Hansen saw only a "[b]unch of cops" and Ausbun standing outside his home, but had neither seen Pounds nor had he ever heard of Pounds.

Hansen also recognized the gun cleaning kits and firearms that were stolen from his home and identified several of those items for the jury. Hansen testified about buying a military ammunition can (containing gun cleaning material) in the late 1950's from an Army surplus store around the time he got out of the Navy. He explained that he realized his gun cleaning supplies were missing when he "talked to the cops that day, and they said my safe is broken." He also identified the pistol that sheriff's officers located in the minivan as his Chinese-made, .22-caliber copy of a pistol from the 1936 Olympics, equipped with a counterweight to "make it easier to hold."

Deputy Joe Emrick provided testimony matching the license plate number of the abandoned black Toyota Celica on June 5, 2017, and the license plate number of the Celica that Vuong photographed on May 29, 2017. Detective Benjamin Wheeler testified that upon showing Hansen some of the recovered firearms, Hansen had "immediate reactions to seeing them, and immediate

- 6 -

commentary on them." Detective Wheeler described the contents of the green military ammunition can and brown rifle cleaning kit that he discovered in the red minivan. Upon showing these two cleaning kits to Hansen, Detective Wheeler explained how Hansen was able to describe their contents without either of those containers being opened. Detective Wheeler also testified that Hansen consistently estimated that 12 of his firearms were stolen. Deputy Edward Brady testified that on July 7, 2017, he made a routine traffic stop of a red minivan which was being driven by Ausbun.[4]

The State also presented postarrest recordings of several jail calls between Pounds and Ausbun, in which they discussed loving each other, having sex, and getting married. Pounds did not testify in his defense.

At the close of evidence, in phase I jury instruction 6, the trial court informed the jury that "[a] person is guilty of theft of a firearm if he or she commits a theft of any firearm." In phase I jury instruction 7, the trial court listed the elements the State needed to prove for count 2 (theft of a firearm), which included the caliber and type of firearm that was allegedly stolen:

> To convict the defendant of the crime of theft of a firearm, each of the following four elements of the crime must be proved beyond a reasonable doubt:
> (1) That between June 5, 2017, and June 13, 2017, the defendant wrongfully obtained a .22 caliber revolver belonging to another;
> (2) A .22 caliber revolver is a firearm;
> (3) That the defendant intended to deprive the other person of the firearm; and
> (4) That this act occurred in the State of Washington.

---

[4] Deputy Brady, who was involved in the June 5, 2017, burglary-in-progress call to Hansen's house, recognized both Ausbun and the 1999 Ford Windstar minivan from the June 5th response.

If you find from the evidence that elements (1), (2), (3) and (4) have been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to anyone of elements (1), (2), (3), or (4) then it will be your duty to return a verdict of not guilty.

In phase I jury instruction 8, the court provided the jury with the following unanimity instruction:

The State alleges that the defendant committed acts of Theft of a Firearm on multiple occasions. To convict the defendant of Theft of a Firearm, one particular act of Theft of a Firearm must be proved beyond a reasonable doubt, and you must unanimously agree as to which act has been proved. You need not unanimously agree that the defendant committed all the acts of Theft of a Firearm.

In phase II jury instruction 5, the trial court similarly listed the elements the State needed to prove for count I (unlawful possession of a firearm), which did not list the caliber or type of firearm:

To convict the defendant of the crime of unlawful possession of a firearm in the first degree as charged in Count 1, each of the following elements of the crime must be proved beyond a reasonable doubt:
(1) That between June 5, 2017 and June 13, 2017, the defendant knowingly had a firearm in his possession or control;
(2) That the defendant had previously been convicted of a "serious offense"; and
(3) That the possession or control of the firearm occurred in the State of Washington.
If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty as to Count 1.
On the other hand, if after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty as to Count 1.

On November 8, 2017, the jury returned verdicts finding Pounds guilty of theft of a firearm in the first degree and guilty of unlawful possession of a firearm. Pounds appeals.

## ANALYSIS

Pounds contends insufficient evidence supports his convictions of theft of a firearm and unlawful possession of a firearm.

## Theft of a Firearm

Pounds argues that the State presented insufficient evidence that he stole one of Hansen's .22-caliber revolvers that was recovered in the abandoned black Toyota Celica. Pounds contends that no one saw him take any guns from Hansen's home, he had no connection to the Toyota Celica, and no connection to the unidentified woman who abandoned the Toyota Celica. The State responds that substantial evidence, both direct and circumstantial, shows a clear trail leading to the conclusion that Pounds stole Hansen's revolvers.

### Standard of Review

We review a challenge to the sufficiency of the evidence de novo. State v. Berg, 181 Wn.2d 857, 867, 337 P.3d 310 (2014). A challenge to the sufficiency of the evidence admits the truth of the State's evidence. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We view all evidence in the light most favorable to the State to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Joy, 121 Wn.2d 333, 338, 851 P.2d 654 (1993). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most

strongly against the defendant." Salinas, 119 Wn.2d at 201. "Circumstantial evidence and direct evidence carry equal weight when reviewed by an appellate court." State v. Trey M., 186 Wn.2d 884, 905, 383 P.3d 474 (2016), cert. denied, 138 S. Ct. 313 (2017).

On appeal, this court "must defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004). Reviewing courts cannot reweigh evidence on appeal. State v. Ramos, 187 Wn.2d 420, 453, 387 P.3d 650, cert. denied, 138 S. Ct. 467 (2017).

## Discussion

A person is guilty of theft of a firearm if he or she commits a theft of any firearm. RCW 9A.56.300. While the "make, model, and serial number of a gun are not elements of theft of a firearm," State v. Jussila, 197 Wn. App. 908, 921, 392 P.3d 1108 (2017), review denied, 191 Wn.2d 1019 (2018), under the "law of the case" doctrine,[5] the inclusion of such identifying features in the "to convict" jury instruction for theft of a firearm make them elements of the crime which the State must prove beyond a reasonable doubt.[6] Jussila, 197 Wn. App. at 924-25.

---

[5] Under the "law of the case" doctrine, in criminal cases, "the State assumes the burden of proving otherwise unnecessary elements of the offense when such added elements are included without objection in the 'to convict' instruction." State v. Hickman, 135 Wn.2d 97, 102, 954 P.2d 900 (1998).

[6] Here, Pounds claims that under the "law of the case" doctrine, the State was required to prove he stole a .22-caliber revolver as opposed to any firearm or a .22-caliber pistol. The State concedes this point and acknowledges its burden to prove theft of a .22-caliber revolver.

The jury convicted Pounds of theft of a .22-caliber revolver. In viewing the evidence in light most favorable to the State, as we must, we conclude the evidence is sufficient to support Pounds' conviction. In the span of four hours, Hansen's revolvers went from being locked in his gun cabinet to being found in a Toyota Celica—associated with Ausbun—that a female abandoned approximately five minutes away from Hansen's home. The State presented evidence establishing that Pounds was the only person seen leaving Hansen's home with something large enough to contain a .22-caliber revolver.

Multiple witnesses testified that Ausbun and Pounds were the only persons in Hansen's home while he was away at the bank. Vuong testified about seeing a man—later identified as Pounds—running out of Hansen's home toward his minivan, carrying a hefty bundle wrapped in fabric, and looking around to see if others were watching. Pounds and Ausbun departed Hansen's home together in a red minivan which still contained the bundle. Hansen described in great detail the gun cleaning kits and the .22-caliber pistol that Detective Wheeler found in the red minivan and told the jury that these items went missing on the same day that he "talked to the cops." While there was no direct testimony regarding the bundle's contents, circumstantial evidence supports the jury's conclusion that Hansen's revolvers were contained in the bundle Pounds carried out of Hansen's home.

Moreover, the State presented evidence establishing a romantic relationship between Ausbun and Pounds. The jurors heard audio recordings of Ausbun and Pounds exchanging their mutual vows of love, discussing their

sexual desires, and talking about marriage. The State presented evidence showing Ausbun being in the immediate vicinity when deputies arrested Pounds and of her driving the red minivan about a month later. Based on all of the evidence presented, we cannot say that no rational jury would conclude that Pounds stole Hansen's revolvers.

Pounds also relies on an inquiry from the jury to argue that the jury struggled to find that he stole a .22-caliber revolver. During their phase I deliberation, the jury sent a written inquiry to the court that stated:

> Instructions 6 + 8 state "theft of any firearm" + "theft of a firearm on multiple occasions. Instruction 7 specifically states "a .22 caliber revolver."
> Are we ruling only on a .22 caliber <u>revolver</u> (7), or are we ruling on any <u>firearm</u> presented in the case (8)?

After consulting with the attorneys, the trial court responded, "Re-read your instructions." Although the jury's inquiry sought clarification on convicting for theft of a firearm or for a .22-caliber revolver, jury instruction 7 contained all of the elements the State needed to prove beyond a reasonable doubt in order to convict Pounds for theft of a firearm in the first degree. Upon receiving the inquiry, the trial court instructed the jury to reread the instructions. On review, we presume the jury has read and applied the appropriate instructions in reaching its verdict. <u>State v. Johnson</u>, 124 Wn.2d 57, 77, 873 P.2d 514 (1994) ("A jury is presumed to follow the court's instructions.").

Accordingly, we affirm Pounds' conviction of theft of a firearm in the first degree.

## Unlawful Possession of a Firearm

Pounds also contends that the State presented insufficient evidence of unlawful possession of a firearm. Specifically, Pounds argues that because the court instructed the jury that he *was charged* with unlawful possession of a .22-caliber revolver, and the State did not object to such instruction, the State was obligated to prove he possessed a .22-caliber revolver rather than the .22-caliber pistol found in his minivan. In response, the State notes that although it *charged* Pounds with possessing a .22-caliber revolver, the trial court denied Pounds' request to include the ".22-caliber revolver" language in the "to convict" instruction as it had in the theft of a firearm charge.

### Standard of Review

Again, evidence is sufficient if a rational trier of fact could find each element of the crime beyond a reasonable doubt. Joy, 121 Wn.2d at 338. Both direct and circumstantial evidence "carry equal weight when reviewed by an appellate court." Trey M., 186 Wn.2d at 905. We draw all reasonable inferences in favor of the State. Joy, 121 Wn.2d at 338.

### Discussion

Under RCW 9.41.040(1)(a), a person is guilty of unlawful possession of a firearm in the first degree when he or she has previously been convicted of a "serious offense" and owns or has in his or her possession or control any firearm.

At the start of phase II of trial, the court read the jury a stipulation that Pounds was convicted of a serious offense in 1989.[7]

Heavily relying on Jussila, Pounds argues the State was obligated to prove that he possessed a .22-caliber revolver. We disagree. In Jussila, Division Three of this court reversed an unlawful possession of a firearm conviction because the trial court's "to convict" instruction contained the make, model, and serial number of the firearm that the defendant allegedly possessed and the State failed to present sufficient evidence of the identifying characteristic of the firearm. Jussila, 197 Wn. App. at 917-18, 932. In the instant case, and unlike Jussila, the trial court's "to convict" instruction did not specifically identify a .22-caliber revolver.

Here, the trial court's sole reference to a .22-caliber revolver in the phase II jury instructions appears in "Phase II: Advance Oral Instruction 1," which states in pertinent part:

> The defendant has been charged in Count 1 with Unlawful Possession of a Firearm in the First Degree. Specifically, the State alleges:
> That the defendant, Robert Nicholas Pounds in King County, Washington, between June 5, 2017 and June 13, 2017, previously having been convicted in King County of a "serious offense" as defined in RCW 9.41.020, knowingly did own, have in his possession, or have in his control, a .22 caliber revolver, a firearm as defined in RCW 9.41.010;
> Contrary to RCW 9.41.010(a), and against the peace and dignity of the State of Washington
> Keep in mind that the information in this case is only an accusation against Mr. Pounds which informs him of the charge.

---

[7] The parties did not present any additional evidence, and the court instructed the jury that it "should consider the evidence presented to you throughout both phases of the trial" during its deliberations.

> *You are not to consider the filing of the information or its contents as proof of the matter charged.*[8]

Because the court did not include the .22-caliber revolver language in the "to convict" instruction and, specifically, instructed the jury to not consider the State's filing of the charges against Pounds "as proof," we presume the jury followed these instructions. Johnson, 124 Wn.2d at 77.

Here, Pounds does not dispute that he possessed or controlled *a firearm*; rather, he argues that he did not possess a .22-caliber revolver. But as we have discussed above, the State was only required to prove possession of a firearm. Detective Wheeler testified that on June 13, 2017, he found *a firearm*—Hansen's Olympic .22-caliber pistol—in Pounds' red minivan. Viewing the evidence in the light most favorable to the State, we conclude sufficient evidence supports the jury's verdict convicting Pounds of the unlawful possession of a firearm in the first degree. We affirm.

_____

WE CONCUR:

_____                _____

_____

8 (Emphasis added.)